UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ALBERT J. MUTSCHLER III, | : | Case No. 3:20-CV-014 |
| | : | |
| Plaintiff, | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE | : | |
| SOCIAL SECURITY | : | |
| ADMINISTRATION, | : | |
| | : | |
| Defendant. | | |

**DECISION AND ENTRY**

## I.  INTRODUCTION

Plaintiff Albert J. Mutschler III brings this challenge to the Social Security Administration's denial of his application for a period of disability and Disability Insurance Benefits. He protectively applied for benefits on June 14, 2016, due to Type II diabetes, high cholesterol, high blood pressure, hypothyroidism, low testosterone, low back pain, herniated disc at L4, sleep disorder, and anxiety. The claim was denied initially and upon reconsideration. After a video hearing held at Plaintiff's request, Administrative Law Judge (ALJ) Laura S. Twilley concluded that

he was not eligible for benefits because he is not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review.

Plaintiff subsequently filed this action seeking a remand for benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. No. 7), the Commissioner's Memorandum in Opposition (Doc. No. 10), Plaintiff's Reply (Doc. No. 11), and the administrative record (Doc. No. 4).

## II. BACKGROUND

Plaintiff asserts that he has been under a disability since July 13, 2015. Plaintiff was 54 years old on the alleged disability onset date. (Doc. No. 4-5 at PageID 190). Accordingly, he was considered a "person closely approaching advanced age" under the Social Security Regulations. *See* 20 C.F.R. § 404.1563(d). At the time of the administrative hearing, Plaintiff was considered to be of "advanced age" under those Regulations. (Doc. No. 4-2 at PageID 53). *See* 20 C.F.R. § 404.1563(e). He has a college education. *See* 20 C.F.R. § 404.1564(4). He meets the insured status requirements through March 31, 2022.

The evidence of record related to Plaintiff's impairments is sufficiently

summarized in the ALJ's decision. (Doc. No. 4-2 at PageID 30-34). Plaintiff referred to the ALJ's recitation of the relevant evidence. (Doc. No. 7 at PageID 989). The Commissioner also discussed the relevant medical evidence within the course of his argument. (Doc. No. 10 at PageID 1022). Rather than repeat those summaries, the Court will focus on the pertinent evidence within the discussion below.

### III. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" – as the Social Security Act defines it – has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job – *i.e.*, "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-

46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241(citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry – reviewing the correctness of the ALJ's legal criteria – may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at

651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-547 (6th Cir. 2004)).

## IV. THE ALJ'S DECISION

As noted previously, it fell to the ALJ to evaluate the evidence connected to Plaintiff's application for benefits. She did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. She reached the following main conclusions:

| | |
|---|---|
| Step 1: | Plaintiff has not engaged in substantial gainful activity since July 13, 2015, the alleged disability onset date. |
| Step 2: | Plaintiff has the following severe impairments: Status Post Lumbar Discectomy with Residuals; Generalized Anxiety Disorder (GAD); and Major Depressive Disorder (MDD). |
| Step 3: | Plaintiff does not have an impairment or combination of impairments that met or medically equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … subject to following limitations: (1) lift and carry twenty-five pounds; (2) no production-rate work or strict production quotas; and (3) frequent interaction with coworkers, supervisors, and the general public." |
| Step 4: | Plaintiff is unable to perform his past relevant work as a CFO/Controller. |

    Step 5:    Plaintiff could perform a significant number of jobs that exist in the national economy including an appointment clerk, order clerk or a customer service representative.

(Doc. No. 4-2 at PageID 30-40). These main findings led the ALJ to ultimately conclude that Plaintiff has not been under a benefits-qualifying disability at any time since July 13, 2015. (*Id.* at 41).

## V.    DISCUSSION

Plaintiff argues that the ALJ erred in evaluating the medical source opinions as to his mental health impairments, and in assuming that Plaintiff retained a residual functional capacity [RFC] that would allow him to perform a significant number of existing jobs. (Doc. No. 7 at PageID 992-998). More specifically, Plaintiff maintains that the medical evidence does not support limiting Plaintiff to "frequent" as opposed to only "occasional" interaction with coworkers, supervisors, and the general public.

The Commissioner counters that no doctor ever opined that Plaintiff required only occasional social interactions, and that Plaintiff offers no support for his argument that this was the appropriate level of restriction. (Doc. No. 10).

    a.  <u>The ALJ's weighing of medical source opinions</u>

"The Social Security Administration defines three types of medical sources: non-examining sources, non-treating (but examining) sources, and treating

6

sources." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 273 (6th Cir. 2015) (citing 20 C.F.R. § 404.1502). "A physician qualifies as a treating source if there is an 'ongoing treatment relationship' such that the claimant sees the physician 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Id.* (citing 20 C.F.R. § 404.1527(c)(2)).

Under the treating physician rule, "greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians . . ." *Rogers*, 486 F.3d at 242; *Wilson*, 378 F.3d at 544. The rationale for the rule is that treating physicians are "the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." *Rogers*, 486 F.3d at 242.

A treating source's medical opinion must be given controlling weight if it is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 416.927(c)(2); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir.2013). If a treating source's medical opinion is not

entitled to controlling weight, the ALJ must apply the following factors in determining what weight to give the opinion: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. 20 C.F.R. § 416.927(c). *See Wilson*, 378 F.3d at 544. *see also Blakley*, 581 F.3d at 408 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4) ("Treating source medical opinions [that are not accorded controlling weight] are still entitled to deference and must be weighed using all of the factors provided in . . . 416.927.").

In addition, an ALJ must "give good reasons in [the] notice of determination or decision for the weight [given to a] treating source's medical opinion." 20 C.F.R. § 416.927(c)(2). The ALJ's reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5). This requirement serves a two-fold purpose: (1) it helps a claimant to understand the disposition of his case, especially "where a claimant knows that his physician has deemed him disabled," and (2) it "permits meaningful

review of the ALJ's application of the [treating-source] rule." *Wilson*, 378 F.3d at 544.

When a medical opinion comes from a non-treating or non-examining source, it usually is not entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2). Rather, the ALJ should consider relevant factors, including supportability, consistency, and specialization. 20 C.F.R. § 404.1527(d)(2). However, no "reasons-giving requirement" applies to non-treating source opinions. *Martin v. Comm'r of Soc. Sec.*, 658 F. App'x 255, 259 (6th Cir. 2016). Rather, the ALJ must provide only "a meaningful explanation regarding the weight given to particular medical source opinions." *Mason v. Comm'r of Soc. Sec.*, No. 1:18 CV 1737, 2019 WL 4305764, at *7 (N.D. Ohio Sept. 11, 2019) (citing SSR 96-6p, 1996 WL 374180, at *2).

The record here contains four opinions as to Plaintiff's mental health impairments at issue herein. The first is from Alan Boerger, Ph.D., who consultatively examined Plaintiff for disability purposes on August 16, 2016. (Doc. No. 4-7 at PageID 596-602). According to Dr. Boerger, Plaintiff "appears to have problems with chronic depression and anxiety with particular concerns over appropriate expression of anger along with obsessive-compulsive tendencies;" he has a history of conflicts with others in work situations, particularly with supervisors

and co-workers; and his problems with depression and anxiety, as well as ongoing situational stressors and emotional symptoms, are "likely to continue for the indefinite future." (*Id*. at 601). Ultimately, Dr. Boerger concluded that Plaintiff's "chronic anxiety and depression are likely to result in reduced frustration tolerance and irritability and reduced ability to handle stress and pressure in [a] work setting." (*Id*. at 602).

 The ALJ assigned Dr. Boerger's opinion "partial weight," stating:

> The record reveals that the claimant's greatest stress and depression was a result of his feeling unfairly treated at his last job. The claimant relayed this to the undersigned during the hearing, as well. The claimant notes that he is able to go to stores without issue, and is able to work in a retail setting, a golf pro shop, for 13-20 hours per week. The claimant testified that he is a season ticket holder for University of Dayton basketball, which again, lends itself to his stress and anxiety being situational.

(Doc. No. 4-2 at PageID 31) (internal citations to record omitted).

 Plaintiff treated with counselor Jerry Knapke, Ed.D., M.Ed., LPCC from July 11, 2016 to May 29, 2018. (Doc. No. 4-7 at PageID 577-593). Dr. Knape noted that Plaintiff copes with his extreme anger and rage by avoiding stressful situations as much as possible. (*Id*. at 579). Dr. Knapke also indicated that Plaintiff was treated with psychotropic medications and counseling with "absolutely no compliance issues," as Plaintiff "works exceptionally hard in therapy and follows up on all

requests." (*Id*. at 580). Dr. Knapke opined that Plaintiff had significant psychological impairments due to his inability to cope with routine and daily stressors over a period of time. (*Id*.).

The ALJ accorded Dr. Knapke's opinion "partial weight." Although she "recognize[d] the treating relationship between Dr. Knapke and [Plaintiff]," she noted that such relationship "was of a short duration of only 4-months" as of the date of Dr. Knapke's opinion, and that "Dr. Knapke is a counselor, not a psychiatrist or psychologist." (Doc. No. 4-2, Page ID 33). The ALJ then continued:

> Counselors are not included among the acceptable sources of medical evidence defined in the regulations (20 CFR 404.1513). Therefore, information provided by counselors does not equal in probative value reports from those medical sources shown as being acceptable such as licensed psychologists (20 CFR 404.1513, and 404.1527). Dr. Knapke does not base his diagnoses[ ] or his opinion upon diagnostic, objective testing, and instead relies solely upon [Plaintiff's] subjective claims …"

(*Id.*).

With regard to Dr. Knapke's opinion that Plaintiff "has psychological impairments to full-time work," the ALJ further observed that such opinion was not shared by any of the psychologists who examined Plaintiff or who reviewed his files; those psychologists "conclude[d] that [Plaintiff] can work, but with reasonable limitations." (*Id.*) (internal citations to record omitted).

11

Karla Delcour, Ph.D. reviewed Plaintiff's files on behalf of the state agency on September 1, 2016, and found Plaintiff to be mildly restricted in social functioning. (Doc. No. 4-3 at PageID 95). She did not include any social interaction restrictions in Plaintiff's RFC. (*Id*. at 97). On reconsideration, Joseph Edwards, Ph.D. reviewed Plaintiff's files in November 2016 and found Plaintiff had moderate difficulties in social functioning. (*Id*. at 108). Dr. Edwards opined that Plaintiff could "maintain brief conventional relations with others." (*Id*. at 111). The ALJ assigned little weight to these two opinions, finding that the reviewing psychologists "did not examine [Plaintiff], perform any psychometric testing on [Plaintiff], or have complete longitudinal medical records. Thus, it is likely that their assessments were not based upon all of the facts." (Doc. No. 4-2 at PageID at 32).

After careful review of the record, this Court concludes that the ALJ did not commit reversible error in evaluating the medical source opinions regarding Plaintiff's mental health limitations. The ALJ appropriately declined to afford deferential weight to the opinion of Dr. Knapke, Plaintiff's treating mental health provider, given his professional status as a counselor rather than a licensed psychologist or psychiatrist. *See* 20 CFR §§ 404.1513, 404.1527. Furthermore, as the ALJ aptly observed, Dr. Knapke's opinion relied on Plaintiff's subjective

complaints, and all three psychologists who offered opinions regarding Plaintiff's mental health limitations assessed Plaintiff's level of social functioning less pessimistically than did Dr. Knapke.

For example, while Dr. Knapke opined that Plaintiff has "significant" psychological impediments to full-time employment "primarily due to his inability to cope with routine, daily stressors" (Doc. No. 4-7 at PageID 580), Dr. Delcour considered Plaintiff to have no more than "[m]ild" difficulty with social functioning (Doc. No. 4-3 at PageID 95), while Dr. Edwards deemed Plaintiff to be "[m]oderately limited" in his ability to interact with the general public, but "[n]ot significantly limited" in his ability to interact with coworkers and supervisors. (*Id.* at 111). The ALJ acted within her discretion in giving little weight to the latter two opinions, given that neither Dr. Delcour nor Dr. Edwards actually examined or performed testing on Plaintiff and their conclusions were based on reviewing incomplete medical records.

In contrast, while examining psychologist Dr. Boerger opined that Plaintiff likely had a "reduced ability to handle stress and pressure in [a] work setting" (Doc. No. 4-7 at PageID 602), he did not state that Plaintiff would be unable to maintain

full-time employment if required to interact with other people. The ALJ adequately articulated the reasons for the weight she assigned to each opinion.

Although Plaintiff faults the ALJ for purportedly failing to specify which portions she did or did not accept of those opinions given partial weight (see Doc. No. 7, pp. 5, 6), the Court disagrees with that characterization of the ALJ's opinion. The undersigned finds that the ALJ sufficiently articulated that she gave weight to each medical source's opinion that Plaintiff suffered from some degree of psychological impairment, yet found no credible objective evidence that such impairment affected his ability to work to the extent claimed by Plaintiff.

Plaintiff's assignment of error based upon the ALJ's weighing of the medical source opinions is not well taken.

b. *The ALJ's RFC assessment*

The regulations permit an ALJ to use the services of a vocational expert at step four to determine whether a claimant can do his past relevant work, given his RFC. 20 C.F.R. § 404.1560(b)(2); *see also Griffeth v. Comm'r of Soc. Sec.,* 217 Fed.Appx. 425, 429 (6th Cir.2007). "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical

and mental impairments.'" *See Varley v. Sec'y of HHS*, 820 F.2d 777, 779 (6th Cir.1987).

An RFC is an assessment of the most a claimant can still do despite his limitations. 20 C.F.R. § 404.1545(a)(1). The RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from – though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir.2002). "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, No. 00–10446–BC, 2004 WL 1765480, at *5 (E.D.Mich. July 14, 2004). The regulations recognize that individuals who have the same severe impairment may have different RFCs depending on their other impairments, pain, and other symptoms. 20 C.F.R. § 404.1545(e).

"The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Redfield v. Comm'r of Soc. Sec.*, 366 F.Supp.2d 489, 497 (E.D.Mich.2005). In fashioning a hypothetical question to be posed to a vocational expert, the ALJ is required to incorporate only those limitations

that he or she accepts as credible. *Maguire v. Comm'r of Soc. Sec. Admin.*, No. 4:13-cv-2545, 2014 WL 7238678, at *4-5 (N.D. Ohio Dec. 17, 2014), quoting *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir.1993). An ALJ is not required to accept a claimant's subjective complaints, and "can present a hypothetical to the VE on the basis of his [or her] own assessment if he [or she] reasonably deems the claimant's testimony to be inaccurate." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir.2003).

During the video hearing, Plaintiff testified that he "ha[s] problems dealing with normal workday stress." (Doc. No. 4-2 at PageID 60). He indicated that he had experienced negative side effects from a variety of prescription medications he had tried in order to address his depression, but that the search for an effective medication "was an ongoing process." (*Id.* at PageID 62, 71-72). A different prescription to treat his anxiety was helping "to a certain degree." (*Id.* at PageID 67). He stated that in the past, he "could lose [his] composure at times" under "pressurized" work situations. (*Id.* at PageID 68). Plaintiff described one past period of mental distress when he took "too personal[ly]" disagreements with his best friend and business partner, and he was charged with assault after poking the friend's son in the finger with a knife. (*Id.* at PageID 68-70). However, at the time of the hearing, he was

16

working part-time at a golf shop, enjoyed attending high school football games, and was a season ticket holder for the Dayton Flyers basketball team. (*Id.* at PageID 65-66, 71-72).

Following Plaintiff's testimony, the ALJ asked the vocational expert [VE] a series of hypothetical questions about the availability of jobs for a person such as Plaintiff who was able to perform work at varying levels and with varying limitations, including either frequent or occasional interaction with coworkers, supervisors, and the general public. (*Id.* at PageID 75-81). The VE testified that a significant number of sedentary, semi-skilled jobs exist for such an individual who is limited to light work and frequent interactions with others. (*Id.* at PageID 78-80). However, those jobs would not be available if such person were limited to only occasional interactions with others. (*Id.* at PageID 79).

In her decision, the ALJ determined that due to transferable skills acquired from past relevant work, Plaintiff has the RFC to perform approximately 297,000 jobs in the national economy, and thus is not disabled. (Doc. No. 4-2 at PageID 41). Plaintiff disputes that finding, contending that the record lacks substantial evidence to support the RFC assigned. (Doc. No. 7, p. 10). In particular, he argues that "<u>not a single mental health professional</u> of record opined that [Plaintiff] could perform full-

17

time semi-skilled work requiring frequent interactions with others." (*Id.*, p. 5) (emphasis *sic*).

The lack of a medical opinion to that effect is not dispositive of the issue, however. The ALJ is responsible for deciding a claimant's RFC. 20 C.F.R. § 404.1546(c). Although an ALJ considers the medical information presented in the record as a whole, the ultimate determination of what to include in the RFC is within the sole discretion of the ALJ. *Id.; see also Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) ("The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts.") (internal quotation marks omitted).

Here, the ALJ detailed reasons that she believed Plaintiff to be capable of frequent interactions with supervisors, coworkers, and others in the workplace. She noted that Plaintiff "is able to go to stores without issue," to maintain a job in a golf pro shop, and to attend basketball and football games among other fans. (Doc. No. 4-2, Page ID 32). She also cited evidence supporting her conclusion that Plaintiff's past history of workplace conflict was "likely . . . situational," given the intense

18

disagreement between Plaintiff and his former friend and business partner regarding the sale of their jointly-owned business. (*Id.*).

As substantial evidence supports the ALJ's conclusion that Plaintiff was capable of frequent job-related interactions with others, and as she did not abuse her discretion in discounting the credibility of any medical opinion that arguably might be read to suggest otherwise, the AJL did not commit reversible error in assessing Plaintiff's RFC and finding him not to be disabled for Social Security purposes.

## IT THEREFORE IS ORDERED THAT:

1. The Commissioner's non-disability determination be **AFFIRMED**; and

2. The case be terminated on the docket of this Court.


September 22, 2021                         *s/Sharon L. Ovington*
                                           Sharon L. Ovington
                                           United States Magistrate Judge